**UNITED STATES of America, Appellee,**

**v.**

**Ruth GRANT, Appellant.**

**No. 272, Docket 73-1746.**

United States Court of Appeals, Second Circuit.

Argued Oct. 4, 1973.

Decided April 1, 1974.

William Epstein, New York City (Robert Kasanof, The Legal Aid Society, New York City, on the brief), for appellant.

Robert B. Hemley, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty. for the Southern District of New York, Bobby C. Lawyer and John D. Gordan, III, Asst. U. S. Attys., on the brief), for appellee.

Before MEDINA, FEINBERG and TIMBERS, Circuit Judges.

FEINBERG, Circuit Judge:

Ruth Grant appeals from a conviction in the United States District Court for the Southern District of New York for embezzling a package from the mails while employed by the Postal Service, in violation of 18 U.S.C. § 1709.[1] Appellant, who is black, claims that we must reverse because the trial judge, Charles L. Brieant, Jr., refused to inquire of prospective jurors as to possible racial prejudice and because certain evidence was improperly admitted. Although we believe it would have been better to make the inquiry after it had been re-

quested, we affirm the conviction because the evidence of guilt was overwhelming and the evidentiary rulings were proper.

The circumstances of appellant's alleged crime need be given only briefly. According to the Government, on June 2, 1972, while working in a branch post office in the Bronx, Mrs. Grant was observed opening a package from which she took two shirts. When she left the post office later with the shirts in a shopping bag, she was arrested by postal agents. Soon after, she signed a statement confessing, among other things, that she had placed the shirts and several other pieces of mail in her shopping bag.[2] At trial, Mrs. Grant again admitted taking the shirts but explained that she did not think she was stealing. According to appellant, the parcel was undeliverable, and when the contents fell out she discovered garments that would fit her grandchildren; she took both the shirts and the bill for them, which was also in the package, intending to pay the store. Mrs. Grant also had an explanation of how she happened to have the other items of mail in her bag. The all-white jury found her guilty.

Her principal argument to us is that the trial judge improperly refused to ask the following question on the voir dire of prospective jurors:

Would the fact that the defendant, Mrs. Grant, is a black woman prevent you in any way from rendering a fair and impartial verdict in this case?

Appellant contends that the judge committed reversible error under Aldridge v. United States, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931),[3] Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973),[4] and various

---

1. Appellant received a sentence of three years probation.

2. The other items were two magazines, Jet and Watchtower, and a plant.

3. In *Aldridge*, a capital case, a black was convicted by an all-white jury of murdering a white policeman. The Supreme Court reversed, holding that under such circum-

stances the trial court's refusal to permit inquiry into possible racial prejudice of prospective jurors violated "the essential demands of fairness." 283 U.S. at 310, 51 S. Ct. at 470.

4. In *Ham*, a black civil rights activist, well known in the local community, was convicted of possession of marijuana. His defense

decisions of other circuits.[5] The argument appears to be couched in the constitutional terms of deprivation of the right to trial by a fair and impartial jury, although it can also be viewed as a request for the exercise of our federal supervisory powers.

■ We have carefully reviewed the record and conclude that, in view of the overwhelming evidence of appellant's guilt, the error here, if any, was harmless beyond a reasonable doubt. See, e. g., Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). But see United States v. Booker, 480 F.2d 1310 (7th Cir. 1973). Mrs. Grant, by her own admissions, established every element of the offense with which she was charged. She signed a statement, whose voluntariness she does not question, confessing that she had knowingly taken the contents of the parcel from the mail, and she reaffirmed the substance of this statement on the stand under oath. Even her highly dubious claim that she intended to pay the store later was not a legally cognizable defense, as the judge correctly charged the jury. In addition, the judge did emphasize to the jurors the importance of being impartial and did ask general questions along these lines. Under all of the circumstances, we hold that the failure to inquire specifically into possible racial prejudice of prospective jurors was not reversible error.

■ ■ We believe it appropriate, however, to express our view that trial judges in the future should inquire into the subject of racial prejudice, if reasonably requested to do so by defense counsel.[6] It hardly needs emphasis that jurors should be impartial. Moreover, appropriate inquiry into the possibility of racial prejudice does not demean the integrity of the federal courts, as the trial judge thought; rather, as Chief Justice Hughes stated in *Aldridge*:

> We think that it would be far more injurious to permit it to be thought that persons entertaining a disqualifying prejudice were allowed to serve as jurors and that inquiries designed to elicit the fact of disqualification were barred.

283 U.S. at 315, 51 S.Ct. at 473. Finally, we think that possible racial prejudice of prospective jurors can be effectively explored without undermining the trial judge's salutary control of the scope of voir dire. Exercising his broad discretion under Fed.R.Crim.P. 24(a), the trial judge need not ask every question on this subject which the ingenuity of counsel can devise. It should suffice to ask a brief question or two, such as the one requested in this case, or even a more general query whether any juror is unable to judge the case fairly because of the race, creed or color of the defend-

was that the police were "out to get him," because of his controversial activities. The Supreme Court reversed, holding that, under the facts shown by the record, the refusal to examine jurors for possible racial prejudice violated the due process clause of the fourteenth amendment. 409 U.S. at 527, 93 S. Ct. at 848.

5. This court has apparently not yet decided whether a black defendant, concerned over possible racial prejudice, may require exploration of that possibility on voir dire. In United States v. Dennis, 183 F.2d 201, 228 (2d Cir. 1950), aff'd, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951), we did note with apparent approval that the jurors in that case had been asked "as to race prejudice," but the reference was only a passing one.

Cf. United States ex rel. Haynes v. Mc-Kendrick, 481 F.2d 152, 157 (2d Cir. 1973).

6. We note that all six circuits to decide the question have held it to be error to refuse to permit reasonable inquiry into racial prejudice on voir dire, even absent the aggravating facts of *Ham* and *Aldridge*. See United States v. Robinson, 485 F.2d 1157 (3d Cir. 1973); United States v. Robinson, 466 F.2d 780 (7th Cir. 1972); United States v. Carter, 440 F.2d 1132 (6th Cir. 1971); United States v. Gore, 435 F.2d 1110 (4th Cir. 1970); King v. United States, 124 U.S.App. D.C. 138, 362 F.2d 968 (D.C.Cir. 1966); Frasier v. United States, 267 F.2d 62 (1st Cir. 1959). In none of these cases, however, did a defendant, as here, conclusively establish her guilt by her own admission.

ant. See United States v. Dennis, 183 F.2d 201, 227–228 (2d Cir. 1950) (L. Hand, J.), aff'd, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); United States v. Bamberger, 456 F.2d 1119, 1129 (3d Cir.), cert. denied, 406 U.S. 969, 92 S.Ct. 2424, 32 L.Ed.2d 668 (1972); Rivers v. United States, 270 F. 2d 435, 436 (9th Cir. 1959), cert. denied, 362 U.S. 920, 80 S.Ct. 674, 4 L.Ed.2d 740 (1960).

■ We wish to make it clear that, in expressing in the preceding paragraph our view regarding an appropriate voir dire inquiry by trial judges on the subject of racial prejudice, we do not intend to undermine the "broad discretion granted to trial judges in this Circuit to determine bias of jurors on challenges for cause," since this is an area where it has long been the view of our court that "the entire voir dire procedure in the empaneling of a jury, by its nature, is one best left to the sound discretion of the judge." United States v. Ploof, 464 F.2d 116, 118, 119 n. 4 (2d Cir.), cert. denied, 409 U.S. 952, 93 S.Ct. 298, 34 L. Ed.2d 224 (1972). See Mikus v. United States, 433 F.2d 719, 722–724 (2d Cir. 1970); United States v. Palumbo, 401 F.2d 270, 275 (2d Cir. 1968), cert. denied, 394 U.S. 947, 89 S.Ct. 1281, 22 L. Ed.2d 480 (1969); United States v. Haynes, 398 F.2d 980, 982–987 (2d Cir. 1968), cert. denied, 393 U.S. 1120, 89 S. Ct. 996, 22 L.Ed.2d 124 (1969); Stephan v. Marlin Firearms Company, 353 F.2d 819, 822 (2d Cir. 1965), cert. denied, 384 U.S. 959, 86 S.Ct. 1584, 16 L.Ed.2d 672 (1966). See also Dennis v. United States, 339 U.S. 162, 168, 171–172, 70 S. Ct. 519, 94 L.Ed. 734 (1950).

■ Appellant's second point on appeal relates to the admission of evidence against her. In her signed statement, which was a government exhibit, appellant admitted taking a plant and two magazines from the mails. Appellant objects to the failure to redact this information and also to the introduction into evidence of the parcel containing the plant. The judge ruled that these references were admissible as evidence of similar acts indicative of criminal intent. Appellant claims that taking a plant and magazines and taking children's garments were not similar acts because the former items, unlike the latter, were undeliverable, of no value, and unreturnable to the sender; since they were destined for destruction under postal regulations, 39 C.F.R. § 159.4, taking them was not unlawful. However, the statute under which appellant was indicted, 18 U.S.C. § 1709, applies broadly to the embezzlement of any item intended to be conveyed by mail; it makes no exception for valueless and undeliverable items slated for destruction. Moreover, the postal regulations nowhere authorize the appropriation of such items by postal employees for their own use; indeed, the elaborate provisions of the regulations, 39 C.F.R. § 159, for the disposition of such items indicate quite clearly that appropriation for personal use is not authorized.[7] We have examined the record and the other arguments made to the trial judge regarding these items of evidence, and we conclude that it was not error to admit them.

Judgment affirmed.

7. See, e. g., 39 C.F.R. § 159.4(a)(2), which specifically requires that magazines be disposed of without examination of their contents, and 39 C.F.R. § 159.2(h)(3), which provides that postal employees may not even bid at sales of salable, perishable items.