UNITED STATES of America,
Appellee,

v.

James REED, Defendant-Appellant.

No. 1195, Docket 75–1174.

United States Court of Appeals,
Second Circuit.

Argued Aug. 12, 1975.

Decided Nov. 18, 1975.

Certiorari Denied March 8, 1976.

See 96 S.Ct. 1431.

Eleanor Jackson Piel, New York City, for defendant-appellant.

Richard J. Hoskins, Asst. U. S. Atty., New York City (Paul J. Curran, U. S. Atty., New York City, of counsel, and Harry C. Batchelder, Jr. and John C. Sabetta, Asst. U. S. Attys., New York City, on the brief), for appellee.

Before OAKES, VAN GRAAFEI-LAND and MESKILL, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from a judgment of conviction for conspiracy to violate the federal narcotics law (21 U.S.C. § 841) after a trial by jury in the Southern District of New York. Since appellant's challenge on appeal goes not so much to the finding of guilt as to the manner in which it was reached, our discussion will be limited to the procedural errors asserted.

Among the exhibits offered by the Government were two tape recordings in which a special government agent is heard arranging an appointment with the defendant. Possession of these recordings was not disclosed to appellant's attorney until three days prior to the trial, the Government having mistakenly denied any electronic eavesdropping only four days earlier. Appellant contends it was error for the trial court to admit these tapes into evidence without having granted his counsel's request for a continuance.

We have read the 429 word transcript of these recordings and see nothing in it which required extensive pretrial preparation. Moreover, the brief of appellant's capable counsel has disclosed nothing which our research overlooked. There was no abuse of discretion in the denial of the continuance. *United States v. Pellegrino,* 273 F.2d 570 (2d Cir. 1960); *United States v. Cirillo,* 499 F.2d 872 (2d Cir.), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638 (1974).

Appellant's second argument for reversal is that it was error for the trial court to "refuse" him inquiry on voir dire on the issue of racial prejudice after his counsel had requested such inquiry. Again, we have gone to the record, and we find no such "refusal." Appellant's counsel requested the court to ask two questions: the first inquiring whether any juror during his lifetime had ever had an "unpleasant experience" with a person of another race; the second inquiring as to membership in any organization, labor union, tenants' group or body of any kind which had been involved in a racial dispute. The court declined to ask these specific questions, and we believe that this was a proper exercise of its discretion.

In this great melting pot which is America, there are few of us who do not

rub shoulders constantly with members of other races. "Unpleasant experiences" between persons of different race therefore connote little unless they are racially motivated. Membership in an organization which has been involved in a racial dispute likewise has little significance. This could encompass membership in such disparate groups as major political parties, religious denominations or national labor unions. Such affiliation does not necessarily carry with it an implication of racial prejudice.

Upon the court's rejection of the proffered questions, the following colloquy occurred:

> The Court: If you wish, I will ask whether anybody on the jury has any prejudice because of the defendant's membership in the negro race. Do you want me to ask that?
>
> Ms. Piel: I don't think that is an appropriate question.
>
> The Court: Do you want me to ask the questions just as you phrase them?
>
> Ms. Piel: I refer you to *United States v. Aldrich.*
>
> The Court: I don't know what you are talking about. *United States v. Aldrich* at this moment does not mean anything to me. If you tell me that I got [sic] to ask questions 5 and 6 the way you phrase them, I decline to do so. The only question I will ask is whether they have any prejudice against negroes, and that you say you don't want me to ask.
>
> Ms. Piel: It is not an adequate question.
>
> The Court: Then I decline to give the questions as you phrase them.
>
> Ms. Piel: I have no pride of authorship. However, the issue should be raised.
>
> The Court: I'm not here to paraphrase your questions. All I can do is to pass on the questions as you submit them, and I decline.

As we read the foregoing exchange, the trial court was prepared to ask a question on the issue of racial prejudice which was both proper and adequate. *Ham v. South Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973); *United States v. Grant,* 494 F.2d 120 (2d Cir.), *cert. denied,* 419 U.S. 849, 95 S.Ct. 87, 42 L.Ed.2d 79 (1974). Having clearly indicated her dissatisfaction with this question, appellant's counsel is hardly in a position to argue in this Court that it should have been asked. Moreover, we have no way of knowing what questions appellant's counsel would have liked the trial court to ask since she proffered none except the two which were properly rejected.

■ A trial should not be a contest of wits between the court and defense counsel searching for reversible error. Neither should it be "an exercise in verbal dialectic." *Richards v. New York, New Haven and Hartford R.R. Co.,* 250 F.2d 609, 610 (2d Cir. 1957). We are satisfied that if appellant's counsel had been seriously concerned about the possibility of racial prejudice, she would have attempted to suggest at least one appropriate inquiry aimed at soliciting this information.

In holding as we do, we do not intend to minimize the importance of appropriate inquiry upon reasonable request to eliminate possible jury bias. *United States v. Grant, supra,* 494 F.2d at 122. However, in the peculiar setting of this case, where there was clear evidence of defendant's guilt, we do not believe that the court's failure to make such inquiry mandates reversal. *Id.*

■ Following his arrest, incriminating admissions were elicited from appellant during an interview by an Assistant United States Attorney. Preliminary *Miranda* questions were asked from, and answers recorded on, a written form. Appellant asserts that he was not properly advised of his constitutional rights, and bases this contention on ambiguities and incompleteness in the recorded questions and answers. After an evidentiary hearing on this issue, Judge Palmieri found in favor of the Government. Since this finding was amply supported

by the testimony of the Assistant United States Attorney and a DEA Agent who had been present at appellant's interview, we find no error in the admission of his statement. *United States v. Diggs,* 497 F.2d 391 (2d Cir.), *cert. denied,* 419 U.S. 861, 95 S.Ct. 112, 42 L.Ed.2d 96 (1974); *United States v. Floyd,* 496 F.2d 982, 988 (2d Cir.), *cert. denied, Miller v. U. S.,* 419 U.S. 1069, 95 S.Ct. 654, 42 L.Ed.2d 664 (1974).

▪ Extensive cross-examination of undercover government agents is not required to establish that they rely upon subterfuge and prevarication in their work. Nevertheless, appellant claims error because the trial court did not permit such extended questioning in this case but, instead, helped to bring the matter quickly into focus through some pointed questions of its own. The trial court also curtailed defense counsel's attempts to engage one of the agents in a philosophical discussion concerning the ethics of this practice.

▪ The duty of a judge to see that a criminal trial is fairly conducted sometimes requires active participation on his part. *United States v. Curcio,* 279 F.2d 681, 682 (2d Cir.), *cert. denied,* 364 U.S. 824, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960). We see no improper interference with the efforts of appellant's counsel, no indication of actual or apparent judicial partisanship and no error.

▪ The District Judge did not abuse his discretion in denying appellant's pretrial motion to preclude impeachment evidence showing appellant's conviction in 1970 for criminal possession of stolen property. This was probative evidence on the issue of credibility, not propensity, and was not so remote in time as to have lost its pertinence. *United States v. DeAngelis,* 490 F.2d 1004, 1009 (2d Cir.), *cert. denied,* 416 U.S. 956, 94 S.Ct. 1970, 40 L.Ed.2d 306 (1974).

Of appellant's numerous complaints concerning the instructions to the jury, the only one which merits comment is the refusal of the court to charge on the issue of entrapment.

▪ While this Court's practice of dividing entrapment into two separate issues—inducement and predisposition—is somewhat artificial, it does place defendant's claim of unfair solicitation in its proper setting. One who welcomes solicitation should not complain if he receives it; to him, it constitutes opportunity, not inducement. Since there was undisputed evidence of appellant's willingness to participate in the sale of drugs prior to any contacts between him and the Government undercover agents, there was no question for the jury concerning his predisposition. *United States v. Miley,* 513 F.2d 1191, 1202 (2d Cir. 1975). Indeed, since the invitation to participate came, not from the Government but from appellant's co-conspirator, there was no question of fact on the issue of inducement. *United States v. Sanchez,* 440 F.2d 649, 650 (9th Cir. 1971); *United States v. McMillan,* 368 F.2d 810, 812 (2d Cir. 1966), *cert. denied,* 386 U.S. 909, 87 S.Ct. 856, 17 L.Ed.2d 783 (1967); *United States v. Berry,* 362 F.2d 756, 758 (2d Cir. 1966).

In summary, while resourceful counsel has explored every possible ground for reversal, we are satisfied that appellant received a fair trial free from prejudicial error; and we affirm.

OAKES, Circuit Judge (concurring):

I concur in the result and state my views in only two respects.

Counsel for the defense attempted to put questions to the jury regarding racial prejudice which were more subtle than the bare "Have you any racial prejudice which would prevent your trying this case fairly?" called for by *Ham v. South Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973); *Aldridge v. United States,* 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931); and *United States v. Grant,* 494 F.2d 120, 122–23 (2d Cir.), *cert. denied,* 419 U.S. 849, 95 S.Ct. 87, 42 L.Ed.2d 79 (1974). Rejecting the more subtle questions, Judge Palmieri offered to ask the *Ham-Aldridge-Grant* question instead. Counsel said that this was "not an adequate question" and vaguely in-

sisted that "the issue should be raised." The court again declined to charge the questions as asked. Even agreeing that the *Ham-Aldridge-Grant* question is likely to be answered by all but the most naive juror in the negative, it still seems to me that at this point it was incumbent on counsel either to suggest additional questions or to make clear to the trial judge that she accepted the *Ham-Aldridge-Grant* question or a substantial equivalent without waiving her right to appeal as to the specific questions asked. But this she did not do. The trial judge understandably thought she was insisting on her own two subtle questions, and unwilling to have the blunt *Ham* inquiry made. It is this omission, it seems to me, that precludes appellant's claim here that error was committed below by failing to make any probe for racial prejudice at voir dire.

The gist of appellant's argument on the *Miranda* point is that, when custodial interrogation was being conducted by the Assistant United States Attorney and appellant was asked the following question—

If you do not have funds to retain an attorney, an attorney will be appointed to represent you and you do not have to answer any questions before this attorney is appointed and you can consult with him. Do you understand that?

—his reply, noted on the interrogation form, was "Yes, sir—needs appointed lawyer." Appellant claims that at this point all questioning should have ceased until a defense attorney was present to assist him.

There was testimony from the Assistant United States Attorney that the defendant "did not ever indicate that he wanted an attorney appointed during the interview." From this the trial court construed the statement that the appellant "needs appointed lawyer" to denote that appellant needed a lawyer prospectively but that he did not want one at the interview. While I do not quarrel with this conclusion, on the basis of the Assistant United States Attorney's testimony, it would certainly have been preferable, and far more in the spirit of *Miranda,* if the form of question asked at the interrogation had been to the following effect: "Understanding your rights as I have explained them, do you want to give me some information at this time about your background and your version of the facts *even though you do not have an attorney present?*"[1] Such a question would serve two purposes. It would help to clarify any possible ambiguity in the defendant's mind as to whether he has a right to consult counsel *before* any further interrogation.[2] More importantly, it would avoid just the type of situation which resulted here, where the interrogating official has to testify as to whether the defendant "ever asked" to have an attorney at the interrogation. This situation unnecessarily places the official's integrity on the line, and it requires the court to rest its judgment on this important constitutional claim on the credibility of different recollections of fact. Were we, in the proper context, to be asked to exercise our supervisory power in this respect, I would be inclined to require greater emphasis in the *Miranda* form used on the right to have counsel present *at the interrogation,* absent a compelling statement of reasons by the Government to the contrary.

1. This is as opposed to the form question, given here and unanswered, which did not include the clause "even though you do not have an attorney present."

2. The preceding question, indented in the text above, tells him this, to be sure, but many defendants are unaware of this right, and the question is rather multiplicitous and vague on this point.