**UNITED STATES of America, Appellee,**

v.

**Olga VALENCIA and William Suarez Valencia, Defendants-Appellants.**

**Nos. 726, 735, Dockets 79–1365, 79–1366.**

United States Court of Appeals, Second Circuit.

March 5, 1981.

**ON REHEARING AND REHEARING EN BANC.**

VAN GRAAFEILAND, Circuit Judge (dissenting from denial of en banc):

The doctrine of *stare decisis* is not "an imprisonment of reason" but "neither is it a whimsy." *United States v. International Boxing Club of New York, Inc.*, 348 U.S. 236, 249, 75 S.Ct. 259, 266, 99 L.Ed. 290 (1955) (Frankfurter, J., dissenting). "Very weighty considerations underlie the principle that courts should not lightly overrule past decisions." *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 403, 90 S.Ct. 1772, 1789, 26 L.Ed.2d 339 (1970).

It is these considerations, perhaps, that have given rise to the commonly accepted doctrine that one Court of Appeals panel cannot overrule the decision of a prior panel but that such disregard of *stare decisis* requires action by an en banc court. *See, e.g., Ingram v. Kumar*, 585 F.2d 566, 568 (2d Cir. 1978), *cert. denied*, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979); *Timmreck v. United States*, 577 F.2d 372, 376 n.15 (6th Cir. 1978), *rev'd on other grounds*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); *Doe v. Charleston Area Medical Center, Inc.*, 529 F.2d 638, 642 (4th Cir. 1975); *United States v. Jenson*, 450 F.2d 1258, 1264 (9th Cir. 1971), *cert. denied*, 405 U.S. 1043, 92 S.Ct. 1326, 31 L.Ed.2d 584 (1972). Courts which espouse this doctrine usually state that panels have no authority to overrule prior panels. *See United States v. Fatico*, 603 F.2d 1053, 1058 (2d Cir. 1979), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980); *Doraiswamy v. Secretary of Labor*, 555 F.2d 832, 847 n.119 (D.C. Cir.1976); *Davis v. Estelle*, 529 F.2d 437, 441 (5th Cir. 1976). However, this is somewhat of an overstatement. The doctrine of *stare decisis* is a moral obligation, *People ex rel. Rice v. Graves*, 242 App.Div. 128, 135, 273 N.Y.S. 582 (1934), *aff'd*, 270 N.Y. 498, 200 N.E. 288 (1936); it is not a rule of compulsion.

Although it is unusual for one panel to acknowledge that it is overruling another,

*but see North Carolina Utilities Commission v. F.C.C.*, 552 F.2d 1036, 1044–45 (4th Cir.), *cert. denied*, 434 U.S. 874, 98 S.Ct. 222, 54 L.Ed.2d 154 (1977), a panel may overturn precedent implicitly by simply ignoring it. Alternatively, the panel may mislabel binding precedent as dictum. Finally, and this is the most invidious alternative, the panel may misinterpret the holding of a prior panel. When a panel misconstrues what a prior panel has said, the misconstruing panel unfairly shifts the responsibility for what may be an erroneous legal concept to the shoulders of other judges. In addition, the panel is able to change the course of the law without setting forth any rationale in support of the change. I fear that this is what occurred in this case.

Rule 35(a) of the Federal Rules of Appellate Procedure provides for en banc consideration when it is necessary to secure or maintain uniformity in the decisions of the court. Because the decision of Judge Oakes, concurred in by District Judge Tenney, is at odds with prior decisions of this Court, I believe this case merits such en banc review. The failure of the necessary majority of my colleagues to agree prompts this dissent.

When the writer stated in his panel dissent that the panel majority did not correctly state the law of the Second Circuit or of any other Circuit, he was not expressing only his own opinion. Professor Roger Park, writing on entrapment in the *Minnesota Law Review*, says that federal courts "have universally declined to permit the defense to be raised in cases where an 'entrapment' was accomplished by a private person rather than a government agent." Park, *The Entrapment Controversy*, 60 Minn.L.Rev. 163, 240 (1976). The Senate Judiciary Committee, which has opted in the proposed Revised Criminal Code to base the defense of entrapment upon the "principles of the common law", *see* S. 1722, 96th Cong., 1st Sess. § 501 (1979), prepared a summary of what it considered that law to be. It said:

A comparison of the competing views of the entrapment defense as they have emerged in the *Sorrells, Sherman,* and *Russell* line of cases reveals a considerable area of common ground occupied by the respective rationales. Under either theory, for example, entrapment may result only from governmental inducement; inducement to wrongdoing by a private person does not establish the defense....

\*   \*   \*   \*   \*   \*

As previously indicated, a basic element of the defense of entrapment is that the [defendant] be induced by the government. Inducement by a private party cannot form the basis for an entrapment defense. However, the entrapper need not be an official in the legal sense. It is sufficient if an agency relationship exists, such as with an informant, even if officials are not aware of the details of the informant's activities.

Senate Comm. on the Judiciary, Criminal Code Reform Act of 1977, S.Rep. No. 605, 95th Cong., 1st Sess. 117–18 (1977).[1]

The federal courts do not stand alone in requiring that entrapment be the act of the Government. Those states which have made entrapment a statutory defense uniformly provide that the inducement must come from a Government officer or his agent, *see, e.g.*, Ga.Code Ann. § 26–905 (1978); Mont.Rev.Codes Ann. 45–2–213 (1979), a person acting "in cooperation" with the officer, *see, e.g.*, Ark.Stat.Ann. § 41–209 (1977); Conn.Gen.Stat.Ann. § 53a–15 (West 1972); Del.Code tit. 11, § 432 (1974); Haw.Rev.Stat. § 702–237 (1976); N.H.Rev.Stat.Ann. § 626.5 (1974); N.Y.Penal Law § 40.05 (McKinney 1975); N.D.Cent.Code § 12.1–05–11 (1976); 18 Pa. Cons.Stat.Ann. § 313 (Purdon 1973), or a person acting "under the direction" of the officer, *see, e.g.*, Colo.Rev.Stat. § 18–1–709 (1978); Utah Code Ann. § 76–2–303 (1978); Wash.Rev.Code Ann. § 9A.16.070(1) (1977).

There are several good reasons for this private-person exception to the entrapment rule. First, there is the "great danger of collusion and false claims" that would prevail in the absence of the exception. Park, *supra*, 60 Minn.L.Rev. at 241. Second, where, as in the instant case, the inducement is claimed to have come from a confederate of the defendant, the Government's burden of proving the defendant's willingness to accede to his confederate's promptings would in many cases be insurmountable. Finally, while arguably the lofty purpose of deterring improper police conduct and preserving respect for the criminal justice system may be served by acquitting defendants entrapped by Government agents, the same purpose would not be served by setting guilty men free who were never even in the agents' gunsights. *Id.* at 242–43.

When a prior panel of this Court decided *United States v. Reed,* 526 F.2d 740 (2d Cir. 1975), *cert. denied,* 424 U.S. 956, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976), it opted squarely for adherence to the traditional rule requiring that the Government have effected the inducement. In *Reed,* two DEA agents met with an unindicted co-conspirator of the defendant to negotiate the purchase of some cocaine. The co-conspirator made a telephone call to a "Gerry", who said that he could sell the agents a quarter kilogram of cocaine and would meet them at the co-conspirator's apartment. After Gerry met with the agents, he called his "source", who agreed to meet Gerry and the agents at a designated location. The "source" turned out to be Reed, who later was arrested.

---

1. In 1971, the United States National Commission on Reform of Federal Laws provided at section 702(2)(e) of its Proposed New Federal Criminal Code that "entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense." *See also* 1 Devitt & Blackmar, Federal Jury Practice and Instructions § 13.09 (3d ed. 1977) and U.S. District Judges Association (5th Cir.), Committee on Pattern Jury Instructions, Criminal § 5 (1979).

One of Reed's arguments on appeal was that the district court had erred in refusing to charge the jury on entrapment. In response to this contention, the Government argued that the defendant could not "establish inducement from the fact that his involvement may have arisen from the actions of a co-conspirator, even though that co-conspirator may have been responding to the inducement of a Government agent or informant." (Government Brief at 24.) That is precisely the issue involved in the instant case. Our holding in *Reed* that "since the invitation to participate came, not from the Government but from appellant's co-conspirator, there was no question of fact on the issue of inducement", 526 F.2d at 743, would seem to be dispositive of the issues presented here.

The panel majority disposed of *Reed* by ignoring it. They then misconstrued *United States v. Swiderski*, 539 F.2d 854 (2d Cir. 1976), in a manner which, to the best of the writer's knowledge, is not concurred in by any other member of this Court, including the surviving members of the *Swiderski* panel. Our district court judges are now left with the task of deciding whether *Reed* and the similar pronouncements of this Court in *United States v. Steinberg*, 551 F.2d 510, 513–14 (2d Cir. 1977),[2] *United States v. Braver*, 450 F.2d 799, 801 n.4 (2d Cir. 1971), *cert. denied*, 405 U.S. 1064, 92 S.Ct. 1493, 31 L.Ed.2d 794 (1972),[3] *United States v. Buie*, 407 F.2d 905, 908 n.5 (2d Cir.), *aff'd* 396 U.S. 87, 89 S.Ct. 284, 24 L.Ed.2d 283 (1969), *United States v. DeAlesandro*, 361 F.2d 694, 698 (2d Cir.), *cert. denied*, 385 U.S. 842, 87 S.Ct. 94, 17 L.Ed.2d 74 (1966), *United States v. Romano*, 278 F.2d 202, 204 (2d Cir. 1960), *United States v. Sherman*, 200 F.2d 880, 882–83 (2d Cir. 1952), still correctly state the law of this Circuit, or whether trial judges henceforth must charge the novel concept of "third-party agency" which seems to have been adopted by the panel majority herein. I believe our district judges deserve some help from this Court, if only to have it explain what a "third-party agent" is.

Our failure to give this matter en banc consideration cannot be justified by the unimportance of the issue involved. A computer search conducted by Professor Park disclosed that for the years 1970 through 1974 there were 405 reported federal entrapment decisions, 65% of which involved drug offenses. 60 Minn.L.Rev. at 230. The cry "I was entrapped," heard with "mounting frequency" when *United States v. Dehar*, 388 F.2d 430, 432 (2d Cir. 1968) was written, continues to be heard with equal frequency today. *See* 18 West's Federal Practice Digest 2d *Criminal Law* §§ 37(1) to 37(8) (Pocket Part 1980). It is common knowledge that most drug cases involve the use of informer-solicitors. *See United States v. Russell*, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973), Park, *supra*, 60 Minn.L.Rev. at 231. If the panel opinion is now the law of this Circuit, a DEA agent who hereafter solicits the sale of drugs by one person may find to his surprise that he has entrapped a nationwide group of conspirators. If an informant pays a bribe or kickback to one officer-holder, the Government may be charged with entrapping everyone who gets a "piece of the action", even though the informant never heard of them.

I am thankful that my panel colleagues have reconsidered their original holding to the extent that they have deleted the doctrine of "inferred" inducement which they originally espoused. However, in remanding for findings by the district court, they have adhered to the proposition that Olga's conversations with her husband may be treated as an inducement by the United States Government. In the absence of any showing that Olga was acting at the insti-

---

**2.** "The defense of entrapment is designed to protect innocent peoples from being convicted for crimes that government agents have unfairly tricked or persuaded them into committing." 551 F.2d at 513.

**3.** "The question of entrapment involves two issues. The first issue is whether the defendant was led or induced to commit the crime by anyone acting for the government." 450 F.2d at 801 n.4.

gation or behest of the Government, I respectfully submit that this is not, and should not be, the law.

I regret that a majority of my colleagues do not consider the matter of sufficient moment to warrant their consideration.