**UNITED STATES of America, Appellee,**

v.

**John Thomas JOHNSON, Jr., Appellant.**

**No. 75–1687.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 9, 1975.

Decided Nov. 11, 1975.

Cabell C. Mercer, Norfolk, Va. [court-appointed counsel] (Epstein & Epstein, Norfolk, Va., on brief) for appellant.

Edward R. Baird, Jr., Asst. U. S. Atty., and (William B. Cummings, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and CRAVEN and BUTZNER, Circuit Judges.

CRAVEN, Circuit Judge:

In this appeal from a Dyer Act[1] conviction, only two questions are presented. We decide both favorably to appellant Johnson, and hold that the district court erred in denying counsel's motion for a mental examination, 18 U.S.C. § 4244, and refusing to question prospective jurors on voir dire concerning possible racial bias.

### I.

Title 18 U.S.C. § 4244 contemplates examination of a criminal defendant by "at least one qualified psychiatrist" if there is "reasonable cause to believe" that the person charged may be presently insane or so mentally incompetent as to be unable to understand the proceedings or properly to assist in his own defense.

Here the cause was abundant. Johnson's bizarre conduct began at arraignment. There he stated that he wanted to waive arraignment, preliminary hearing, his right to counsel, and be tried immediately.

On the morning of the trial, counsel disclosed to the court that:

> The defendant has failed to cooperate with counsel in any manner whatsoever. He is unable to give a rational basis for his failure to cooperate. He is either unable or will not say why he does not want a defense in this case. Apparently he may even want to be convicted. It is just irrational.

During two pretrial interviews, Johnson refused to discuss the case with appointed counsel. When asked on the morning of trial about his refusal to cooperate, Johnson claimed that he had cooperated and in almost the same breath stated that he would not tell counsel about the facts of the case because there had "been a lot of chicanery in my case."

On the morning of trial, Johnson also requested a "continuation" of the case. When asked what the grounds for the motion were, he requested that he be allowed to discuss them in chambers, refusing both to give reasons for wanting an in-chambers conference and to say in open court why he wanted the continuance.

During the same interchange with the district judge, Johnson stated that he did not want his lawyer to conduct cross-examination and that he did not want to cross-examine witnesses either. However, during the trial, he did not protest counsel's cross-examination.

Finally, at sentencing when the prosecutor recommended the maximum sentence, Johnson responded, "I second the United States District Attorney's motion."

▇ Apparently the district judge denied counsel's motion for a psychiatric

1. 18 U.S.C. § 2312.

examination because appellant Johnson himself opposed the motion. In light of *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), we view the district court's concern sympathetically. But to decline to inquire into the competency of one charged with crime is not at all the same thing as deferring to the decision of a competent defendant to conduct his own defense. That Johnson himself opposed the psychiatric examination is just as consistent with incompetency as it is with competency. We hold it is error to defer to the wish of a person charged with crime where there is reasonable cause to believe that he may be presently insane or so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense.

We adhere to what Judge Boreman, speaking for the court in *United States v. Burgin,* 440 F.2d 1092 (4th Cir. 1971), said:

> A district court is required to grant a § 4244 motion for a mental examination unless the motion is not made in good faith or the grounds for the motion are frivolous.

*Id.* at 1094.

## II.

Johnson, who is black, requested that the district judge ask the following question on *voir dire*: "Do you believe that black men are more prone to commit crimes than white men?" The court refused, and Johnson appeals that decision.

In *United States v. Gore,* 435 F.2d 1110 (4th Cir. 1970), we held that the refusal of the accused's request for examination of the jury about racial prejudice was reversible error. Because the refusal to make the inquiry in that case was nearly prejudicial, we found it unnecessary to determine whether every refusal is such an impairment of the right to challenge jurors that it can never be harmless error.

Two years later in *United States v. Rivers,* 468 F.2d 1355 (4th Cir. 1972),

*cert. denied,* 411 U.S. 969, 93 S.Ct. 2159, 36 L.Ed.2d 691 (1973), we concluded that because the accused was tried by a racially mixed jury and the government's case presented by racially mixed witnesses, the refusal of the court to ask the panel of jurors about racial prejudice was harmless error. But we emphasized that the failure to pose the questions *was* error and that the district judge should have asked them.

Subsequent to our decisions in *Gore* and *Rivers,* the United States Supreme Court has decided *Ham v. South Carolina,* 409 U.S. 524, 527, 93 S.Ct. 848, 850, 35 L.Ed.2d 46 (1973), holding that the "essential fairness required by the Due Process Clause of the Fourteenth Amendment requires that under the facts shown by this record the petitioner be permitted to have jurors interrogated on the issue of racial bias." The facts as recited by the Court are meager: simply that Ham was a bearded black and a well-known civil rights worker charged with the possession of marijuana and sentenced to a term of imprisonment. Complexion of jury and government witnesses is not disclosed, which makes us wonder if the count we made in *Rivers* is of any real significance. The Seventh Circuit has entertained the same doubt and has concluded that *Ham, supra,* establishes a *per se* rule and "persuades us that on direct review of a federal conviction we should reverse without attempting to appraise the actual likelihood of prejudice to [the] appellant." *United States v. Booker,* 480 F.2d 1310, 1311 (7th Cir. 1973). *Accord United States v. Robinson,* 485 F.2d 1157 (3d Cir. 1973).

But even after *Ham, supra,* the Second Circuit has taken the position that error in failing to inquire as to racial prejudice *can* be harmless beyond a reasonable doubt. *United States v. Grant,* 494 F.2d 120 (2d Cir.), *cert. denied,* 419 U.S. 849, 95 S.Ct. 87, 42 L.Ed.2d 79 (1974). We are inclined to agree that *Ham* establishes no *per se* rule, but we reiterate what we have said twice before: it is error to refuse to ask the question. And in the future we an-

ticipate that only in the extremely unusual case will the prosecutor be able to sustain his heavy burden of showing that the error was harmless.

■ Although it is clearly error to refuse the question, we agree with the Second Circuit that the trial judge has broad discretion under Fed.R.Crim.P. 24(a) as to the verbiage and extent of the inquiry. He "need not ask every question on [the] subject which the ingenuity of counsel can devise." A general query whether any juror is unable to judge the case fairly because of race, creed or color of the defendant should suffice. *Grant, supra* at 122–23. *See also Ham, supra*, 409 U.S. at 527, 93 S.Ct. 848.

On remand Johnson will be accorded a mental examination, and if found competent he will be awarded a new trial[2] at which, upon his request or upon the request of counsel, the court will inquire on *voir dire* as to any racial bias among prospective jurors.

*Reversed and remanded.*

BUTZNER, Circuit Judge (specially concurring):

I concur. *United States v. Gore*, 435 F.2d 1110 (4th Cir. 1970). But I do not subscribe to dicta qualifying the meaning of *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), with a gloss that tolerates the error. *United States v. Booker*, 480 F.2d 1310 (7th Cir. 1973).

2. We agree with the statement in *Burgin, supra*, that "[i]n the absence of a mental examination . . . prior to . . . trial it would be extremely difficult, if not impossible, to make a retrospective determination of [this defendant's] competence to stand trial." 440 F.2d at 1095. *See also Drope v. Missouri*, 420 U.S. 162, 183, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 387, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Dusky v. United States*, 362 U.S. 402, 403, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).