885 F.2d 866
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Miriam SHULL, Petitioner-Appellant,
v.
STATE OF SOUTH CAROLINA, Respondent-Appellee.
 No. 88-7527.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 7, 1988.
Decided Sept. 5, 1989.
Rehearing and Rehearing En Banc Denied Nov. 9, 1989.
 
 Michael Jeffrey Thompson for appellant.
 Donald John Zelenka, Chief Deputy Attorney General (T. Travis Medlock, Attorney General, on brief), for appellee.
 Before ERVIN, Chief Judge, and WIDENER and WILKINS, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 Miriam Shull was convicted of criminal conspiracy and criminal sexual conduct with a minor by a South Carolina court and sentenced to 75 years' imprisonment. Mrs. Shull sought habeas corpus relief in the district court, arguing that she received ineffective assistance of counsel in her state trial. The district court found that Mrs. Shull's trial counsel's performance was deficient but that she was not prejudiced by the deficient performance. See Strickland v. Washington, 466 U.S. 668 (1984). We affirm.
 
 
 2
 Miriam Shull was represented by Robert Williams at trial. Williams recognized that the State's case was insurmountable from an evidentiary point of view since the State had diaries and actual photographs to prove its case. He recommended that she plead guilty or explore the possibility of an insanity defense. Williams felt that the type of crime involved, sexual conduct with Mrs. Shull's minor son at the instance of her boyfriend, indicated something was mentally wrong with Mrs. Shull. Mrs. Shull's family members also told Williams that they thought that something was wrong with her and that she needed help. Williams personally felt she had a mental problem. Williams did not further investigate the issue because Mrs. Shull refused to have a mental examination. Williams did mention to the trial court, however, that he felt Mrs. Shull needed a psychiatric examination and that she refused to be examined. He did not, however, move for an examination and testified that he did not because he believed that she would lose confidence in him. Williams' defense tactic was to emphasize a lack of Mrs. Shull's willfulness. Williams put on no evidence at trial and at sentencing, at Mrs. Shull's instance, informed the court that she wanted no mercy, this latter to indicate remorse and hope for sympathy.
 
 
 3
 At the state habeas corpus hearing, Dr. Diane Follingstad, a clinical psychologist, testified that Mrs. Shull had a "borderline personality disorder" and a "dependent personality disorder." Dr. Follingstad further testified that Mrs. Shull had never been out of contact with reality; at first, Mrs. Shull knew the idea of incest was wrong but, after her boyfriend's persistent arguments, came to a point where she no longer believed it to be wrong; and that she understood how the court proceedings would work and the nature of a jury trial. Dr. Follingstad testified that Mrs. Shull would not have been able to communicate effectively with her attorney due to domination by her boyfriend. The district court found that Williams' performance was deficient in failing to pursue the sanity issue but that Mrs. Shull was not prejudiced. South Carolina argues that the district court was incorrect in finding that Williams' performance was deficient in not pursuing the competency and sanity issues in light of Mrs. Shull's refusal to be examined. This is a question we do not decide, however. The district court's analysis centered on Brennan v. Blankenship, 472 F.Supp. 149 (W.D.Va.1979), aff'd mem., 624 F.2d 1093 (4th Cir.1980) (unpublished). In Brennan, the defendant conclusively rejected an insanity defense. The court nevertheless found ineffective assistance of counsel because the attorney did not pursue an investigation of an insanity defense. The court found it improper for the attorney to rely on the defendant's uninformed wishes, especially when the attorney had reason to suspect the defendant's reasoning abilities. And while the case does not deal with ineffective counsel, the reasoning of United States v. Johnson, 527 F.2d 1104, (4th Cir.1975), is consistent with the district court's analysis. In Johnson, the defendant opposed a motion for a mental examination, and the district court denied the request apparently for that reason. We analyzed the case under Faretta v. California, 422 U.S. 806 (1975), and nevertheless reversed, noting that a defendant's opposition to "the psychiatric examination is just as consistent with incompetency as it is with competency" and that it was "error to defer to the wish of a person charged with a crime where there is reasonable cause to believe he may be presently insane."[1] Williams, in the case at hand, felt that a psychiatric examination was needed, and on that account the district court decided that his performance was ineffective because he did not move for such in the trial court. Without deciding that such is the proper standard,[2] the way the district court proceeded is certainly fair to Mrs. Shull, and we will proceed on that basis. The district court found that, although the defense attorney's performance was deficient, Mrs. Shull was not prejudiced by it because Dr. Follingstad's testimony did not support a M'Naughten defense; from the evidence, Mrs. Shull did not establish that she was incompetent at the time of trial; and evidence as to her mental state presented at the sentencing hearing would probably not have resulted in a different sentence. South Carolina follows the M'Naughten standard that the test of whether an accused is criminally responsible "is whether he had the mental capacity to distinguish moral or legal right from moral or legal wrong, and to recognize the particular act charged as morally or legally wrong." State v. Law, 244 S.E.2d, 302, 304 (S.C.1986). The district court characterized Dr. Follingstad's testimony of Mrs. Shull's mental state regarding the crime as one of rationalization: that she at first knew that her acts were wrong but listening to her boyfriend's arguments gradually disposed of her repugnance. Such a characterization of Dr. Follingstad's testimony is accurate. Dr. Follingstad further testified that Mrs. Shull had never been out of contact with reality. Thus, we are of opinion that the finding of the district court that Dr. Follingstad's testimony is insufficient to establish that Mrs. Shull did not have "the mental capacity to distinguish moral or legal right from moral or legal wrong," as required in South Carolina, is not subject to exception. Mere rationalization does not constitute a defense under the M'Naughten standard.
 
 
 4
 We also decline to reverse the district court's finding that Mrs. Shull had failed to establish that she was incompetent at the time of trial. The test to consider competency is "whether he [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him," Dusky v. United States, 362 U.S. 402 (1960). Dr. Follingstad testified that Mrs. Shull understood how the court proceedings would work and the nature of a jury trial. Although Dr. Follingstad testified that Mrs. Shull would not have been able to communicate effectively with her attorney due to the domination of her boyfriend, Follingstad did not interview Mrs. Shull's attorney, review his records, discuss his representation with Mrs. Shull, or have any personal knowledge of the communication between the two. During the period that the defense was being prepared, Mrs. Shull and her boyfriend were segregated in jail and not allowed to see each other. Such a separation would weaken any domination that Mrs. Shull's boyfriend had over her. Mrs. Shull's trial attorney testified that she had no trouble communicating with him, and that she was cooperative and understood the process. Mrs. Shull testified that she met with her attorney on numerous occasions and that he explained such things as her constitutional rights, her defense, and his investigation. Mrs. Shull testified that she understood the proceedings and that the only problem she had communicating with her attorney was their disagreement about whether she should have a mental examination. In finding that Mrs. Shull did not establish that she was incompetent at time of trial, the district court credited the testimony of Mrs. Shull and her trial attorney over that of Dr. Follingstad. We find no error in the district court's finding.
 
 
 5
 Finally, the district court found no prejudice at the sentencing phase since evidence of the influence of Mrs. Shull's boyfriend over Mrs. Shull was brought out at trial and the sentencing judge nevertheless was adamant about imposing a long sentence. Dr. Follingstad testified that Mrs. Shull was susceptible to domination by her boyfriend since she had a "borderline personality disorder" and a "dependent personality disorder." At trial, Mrs. Shull's attorney brought out the domination issue and facts to support it. Even with such evidence before the judge, at sentencing he stated that the crime was "one of the most heinous, dastardly, corrupt, evil cases, that I have ever seen. The conscience of this community is shocked by it, and I intend to voice that conscience in imposing sentence." We agree with the district court that there is little probability that, had the defense attorney put on Dr. Follingstad's testimony for purposes of mitigation, the sentence imposed would have been different. The judgment of the district court is
 
 
 6
 AFFIRMED.
 
 WILKINS, Circuit Judge, concurring:
 
 7
 I concur with Judge Widener in affirming the grant of summary judgment but on alternate grounds. Since the district court correctly found that Shull was competent to stand trial, I would hold that defense counsel was not deficient in following his client's specific direction not to pursue an insanity defense.
 
 I.
 
 8
 The district court, relying on Brennan v. Blankenship, 472 F.Supp. 149 (W.D.Va.1979), aff'd mem., 624 F.2d 1093 (4th Cir.1980), concluded that Shull's instruction to her privately-retained attorney not to pursue an insanity defense did not justify his failure to do so. But Brennan is not dispositive authority, for in that case prior to trial a defense psychiatrist had determined that the defendant was both incompetent and psychotic. Indeed, defense counsel at one point in the proceedings succeeded in obtaining a continuance from trial on the basis that Brennan was not competent. Despite this evidence, defense counsel failed to pursue an insanity defense in part because the defendant voiced objection to the presentation of such a defense. The district court granted Brennan's petition for a writ of habeas corpus, finding that defense counsel was ineffective in relying on the wishes of a client whose reasoning abilities were suspect: "It is no answer for [the attorneys] to now assert that Brennan conclusively rejected an insanity defense." Brennan, 472 F.Supp. at 156.
 
 
 9
 Prior to trial there was no evidence to support a belief that Shull was incompetent and now the only evidence suggesting incompetency is an opinion of a psychologist who did not interview her until 16 months after the trial, never interviewed her attorney, and admitted on cross-examination that she had no knowledge of whether Shull was able to effectively communicate with him. As noted by Judge Widener, the testimony of both Shull and her attorney at the post-conviction proceedings amply supported the district court's finding of competency. The record demonstrates that she had a rational understanding of the charges she faced and the nature of the trial proceedings, and was able to assist with her defense. Although the decision in Brennan is not controlling, it does provide some guidance on the issue before us. In quoting from the comments of the Advisory Committee to the American Bar Association Standards Relating to the Defense Function, the court stated that "[i]f the defendant is mentally competent, the decision as to what plea to make ultimately belongs to him." Brennan, 472 F.Supp. at 156. Since competent defendants are allowed the decision on what plea to enter, they surely have the right to decide what defense(s) they wish to present. And within the bounds of ethical requirements, a defense attorney must comply with his competent client's ultimate decision.
 
 II.
 
 10
 I am persuaded that the proper rule has previously been announced by the Eleventh Circuit. Alvord v. Wainwright, 725 F.2d 1282 (11th Cir.1984); Foster v. Strickland, 707 F.2d 1339 (11th Cir.1983). In Alvord the court rejected the petitioner's claim that he was rendered ineffective assistance of counsel because his attorney failed to investigate and pursue an insanity defense. Alvord, who was found competent to stand trial, had a long record of mental illness prior to his trial on three counts of murder. Indeed, under Florida law Alvord was entitled to a presumption of insanity due to a prior adjudication of insanity. See Hixon v. State, 165 So.2d 436 (Fla.App.1964). Despite this potential advantage of shifting to the state the burden of proving sanity beyond a reasonable doubt, Alvord's defense counsel failed to investigate the possibility of presenting an insanity defense due to Alvord's insistence that a weak alibi defense be offered instead. Despite the evidence of prior insanity determinations, the court concluded that effective assistance of counsel was provided "[i]n light of Alvord's refusal to assert the insanity defense, although earnestly counseled by his defense attorney to do so." Alvord, 725 F.2d at 1289. The court reasoned that once a defendant is determined competent to stand trial, his attorney is "ethically bound to follow his client's wishes." Id. (citing Foster, 707 F.2d at 1343.).
 
 
 11
 In Foster the court was faced with the same type of allegation raised here and in Alvord. Foster, who was convicted of murder and sentenced to death, claimed that his attorney was ineffective in failing to present an insanity defense despite Foster's own wishes to the contrary. The court rejected Foster's contention because his attorney "had no choice but to refrain from doing so." Foster, 707 F.2d at 1343. In support of its conclusion, the court cited The Code of Professional Responsibility.[1]
 
 III.
 
 12
 This approach is consistent with the prior decision of this court in United States v. Johnson, 527 F.2d 1104, 1106 (4th Cir.1975). There, the court faced the question of whether the district court erred in denying a motion for a psychiatric examination on the ground that the defendant opposed the motion. In deciding that the examination could not be denied solely on the defendant's wishes, the court stated that:
 
 
 13
 [T]o decline to inquire into the competency of one charged with crime is not at all the same thing as deferring to the decision of a competent defendant to conduct his own defense.... We hold it is error to defer to the wish of a person charged with crime where there is reasonable cause to believe that he may be presently insane or so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense.
 
 
 14
 Johnson, 527 F.2d at 1106. The court thus implicitly recognized that when a defendant is competent, defense counsel must defer to the client's decision in determining which defenses to pursue. Unlike the defendant in Johnson, who failed to discuss the case with his attorney or cooperate in any manner, Shull cooperated fully with her retained attorney but against his advice was adamant that he not attempt to pursue an insanity defense. Instead, the record demonstrates that unless a satisfactory plea bargain could be made, Shull's strategy was to plead not guilty since she steadfastly believed that her son would not testify against her.[2] Regardless of Shull's reason for refusing a sanity evaluation, she was competent to stand trial and entitled to make decisions regarding her defense. Even if Shull's attorney had successfully moved over her objection for a psychiatric examination, it would have served no purpose without her cooperation. Thus, it did not constitute ineffective assistance of counsel for her attorney, after properly advising her, to follow her instructions.
 
 IV.
 
 15
 Finally, I join Judge Widener's result and reasoning on the issue of the failure of counsel to offer any plea in mitigation.
 
 ERVIN, Chief Judge, dissenting:
 
 16
 Because the record supports the district court's finding that trial counsel's failure to pursue an insanity defense constituted ineffective assistance, and because I find Ms. Shull was substantially prejudiced by that ineffective assistance, I dissent.
 
 I.
 Ineffective Assistance of Counsel
 
 17
 At the post-conviction relief ("PCR") hearing, Ms. Shull's trial counsel, Robert Williams, stated that Ms. Shull did not want to undergo a psychiatric evaluation, and that he chose not to compel such an evaluation because he feared undermining his client's confidence in him. Seizing this one piece of testimony, the concurrence dismisses the ineffective assistance of counsel claim on the grounds that Ms. Shull was competent to stand trial, that she had refused to undergo a psychiatric examination, and that Williams was obligated by ABA "Ethical Considerations" to conform to the wishes of his competent client.
 
 
 18
 As the district court recognized, however, regardless of Ms. Shull's competency to stand trial, which is in no way conclusively established by the record before this court,[1] the relevant case law indicates that Williams should have "vigorously pursued" an insanity defense. His failure to do so violated Shull's sixth amendment right to the effective assistance of counsel.
 
 
 19
 The standard to be applied in evaluating a habeas petitioner's ineffective assistance of counsel claim is whether "defense counsel's representation [was] within the range of competence demanded of attorneys in criminal cases." Marzullo v. Maryland, 561 F.2d 540, 543 (4th Cir.1977). See also Strickland v. Washington, --- U.S. ----, ----, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).
 
 
 20
 In finding that the Marzullo/Strickland5i standard had been met, the concurrence bases its "ethical consideration" theory primarily on two Eleventh Circuit decisions, Alvord v. Wainwright, 725 F.2d 1282 (11th Cir.1984), and Foster v. Strickland, 707 F.2d 1339 (11th Cir.1983). Both of those cases, however, are readily distinguishable from the situation at hand. The defendant in Alvord sought a habeas writ on sixth amendment grounds, claiming that his attorney failed to assert an insanity defense. At trial, however, the defendant had "affirmatively sought to prevent" the assertion of this defense. The court of appeals, therefore, rejected his petition, but only after finding that defense counsel had arranged for a court ordered examination of the defendant by two psychiatrists. The psychiatrists each examined the defendant several times, and both found him competent to stand trial. Neither doctor was able to form an opinion as to the defendant's sanity at the time of the crime. After the defense attorney failed in his efforts to convince the judge to rule his client incompetent, he conformed with his client's wishes not to present an insanity defense. The Eleventh Circuit found "under these circumstances [defense counsel's] decisions and actions constituted reasonably effective assistance." 725 F.2d at 1288 (emphasis added). Similar circumstances simply do not exist here, where Williams failed to even investigate the possibility of an insanity defense.
 
 
 21
 The defendant in Foster also sought a writ of habeas, claiming ineffective assistance of counsel. The defense attorney had arranged for the examination of his client by three psychiatrists, all of whom found the defendant competent to stand trial and legally same at the time of the crime. Although defense counsel wanted to present a second degree murder defense based on a "depraved mind" theory, the defendant insisted on pleading not guilty and ordered his attorney to "pin the blame on the two women present at the murder and attribute his inaction at the time of the killing to one of his infrequent epileptic fits." 707 F.2d at 1343. In light of the testimony of the three psychiatrists confirming defendant's competence and sanity, and in view of the client's insistence that he plead not guilty, the Eleventh Circuit found that the defense attorney "had an ethical obligation to comply with his client's wishes." Again, Foster differs radically from the instant case, in that the defense counsel there adequately performed his investigative duties.
 
 
 22
 Those investigative duties, which both the concurrence and the majority fail to address, are set forth in ABA Standard for Criminal Justice 4-4.1, which provides in relevant part:
 
 
 23
 In many criminal cases the real issue is not whether the defendant performed the act in question but whether the defendant had the requisite intent and capacity. The accused may not be aware of the significance of facts relevant to intent in determining criminal responsibility.... The basis for evaluation of these possibilities will be determined by the lawyer's factual investigation, for which the accused's own conclusions are not a substitute.
 
 
 24
 The lawyer's duty is to determine, from knowledge of all the facts and applicable law, whether the prosecution can establish guilt in law, not in some moral sense.
 
 
 25
 .............................................................
 
 
 26
 ...................
 
 
 27
 * * *
 
 
 28
 The lawyer also has a substantial and important role to perform in raising mitigating factors both to the prosecutor initially and to the court at sentencing. This cannot effectively be done on the basis of broad general emotional appeals or on the strength of statements made to the lawyer by the defendant. Information concerning the defendant's background, education, employment record, mental and emotional stability, family relationships, and like will be relevant, ... Investigation is essential to fulfillment of these functions. Such information may lead the prosecutor to defer or abandon prosecution and will be relevant at trial and at sentencing.
 
 
 29
 Effective investigation by the lawyer has an important bearing on competent representation at trial, for without adequate investigation the lawyer is not in a position to ... conduct plea discussions effectively.
 
 
 30
 .............................................................
 
 
 31
 ...................
 
 
 32
 * * *
 
 
 33
 The effectiveness of advocacy is not to be measured solely by what the lawyer does at the trial; without careful preparation, the lawyer cannot fulfill the advocate's role. Failure may be grounds for finding ineffective assistance of counsel.
 
 
 34
 I have no argument with the assertion that an attorney may be bound to follow the wishes of his competent client. As Alvord, Foster and the ABA Standards demonstrate, however, before he becomes bound by his client's wishes, an attorney must investigate all reasonable avenues of defense and all reasonable trial strategies. Only then can he provide the client with the information necessary to allow the client to make informed decisions regarding his defense. It was in his investigation, therefore--or in his gross lack thereof--that Williams so inexcusably failed his client.
 
 
 35
 This duty to investigate was recognized by the Strickland court itself, which stated:
 
 
 36
 Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any effectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
 
 
 37
 --- U.S. at ----, 104 S.Ct. at 2066.
 
 
 38
 Even applying to Williams' decision the degree of deference mandated by the Supreme Court, I find that his conduct falls short of the minimum level of competence required under these circumstances.
 
 
 39
 In applying the Marzullo/Strickland competence standard to a case involving counsel's failure to investigate an insanity defense, one district court noted that "counsel has an affirmative obligation to make further inquiry where the facts known and available, or with minimal diligence accessible to defense counsel, raise a reasonable doubt as to the defendant's mental condition." Loe v. United States, 545 F.Supp. 662, 666 (E.D.Va.1982), aff'd without publ. opinion, 701 F.2d 169 (4th Cir.1983). Another district court applying Marzullo to a similar case stated "[i]f reasonable grounds exist for questioning the sanity or competency of a defendant and counsel fails to explore the matter, the defendant has been denied effective assistance of counsel." Wood v. Zahradnick, 430 F.Supp. 107, 111 (E.D.Va.1977) aff'd, 578 F.2d 980 (4th Cir.1978).
 
 
 40
 Williams obviously felt that reasonable grounds existed for doubting both Ms. Shull's competency and her sanity. This fact is evidenced by Williams' testimony at the PCR hearing that he suggested several times that Shull undergo a psychiatric evaluation, and that, in his opinion, Ms. Shull was not "in her right mind" before and during the trial. Additionally, on the day trial began Williams told the court:
 
 
 41
 I have ... asked [Ms. Shull] in regards to a psychiatric examination of her, as I felt it was in need. She told me she does not want a psychiatric examination and wishes to proceed.... I ask the record to note that.[2]
 
 
 42
 Shull's need to undergo a psychiatric evaluation and pursue an insanity defense was, as the district court noted, "strongly suggested by the circumstances of the case." Memorandum Order at p. 9. A number of federal courts, including this one, have found that a defendant lacked effective representation where his attorney failed to vigorously pursue an insanity defense where the circumstances of the particular case, or the nature of the crime itself, or both, suggested the possibility of such a defense. See, e.g., Walker v. Mitchell, supra, at 1440 ("Although [defendant] had some apparent motivation for the crime, the circumstances in which the shooting took place--no immediate provocation, relatively calm preceding moments, no attempt at secrecy ... strike the court as bizarrely suspicious"); Brennan v. Blankenship, 472 F.Supp. 149, 155 (W.D.Va.1979) (Defendant's conduct and communications to his attorney "should have been sufficient to alert any trained attorney as to the possibility of an insanity defense. When it appears to defense counsel that psychiatric assistance is needed to prepare his client's defense, counsel is under a duty to seek it."); Johnson v. United States, 527 F.2d 1104 (4th Cir.1975) (Holding that defendant's irrational conduct in interfering with his own defense suggested a need for a psychiatric examination). As in Walker, Brennan, and Johnson, the circumstances of this case so strongly suggested an insanity defense that Williams failed to represent Shull effectively when he declined to pursue it.
 
 
 43
 I note that the courts in each of the above mentioned cases found that defense counsel's failure to vigorously pursue an insanity defense resulted in a sixth amendment violation regardless of the defendant's competency to stand trial. The Brennan court found a violation despite the defendant's assertions to his attorney that he did not want to argue the defense of continuing insanity. In granting the defendant's habeas petition Judge Turk correctly stated:
 
 
 44
 It is no answer for [the state] to now assert that [defendant] conclusively rejected an insanity defense.... in such circumstances [putting counsel on notice of the viability of an insanity defense], it can scarcely be said that defense counsel discharged their professional responsibility by allowing their case to be guided simply by the uninformed wish of their client.... Under any professional standard, it is improper for counsel to blindly rely on the statement of a criminal client whose reasoning abilities are highly suspect.
 
 
 45
 472 F.Supp. at 156.
 
 
 46
 The idea that a criminal attorney should not rely on the wishes of a client with "suspect reasoning abilities" is reflected in the fact that a criminal attorney can ask the court to compel his client to undergo a psychiatric examination, even though the client might be opposed to such an exam. See e.g., Johnson, supra, 527 F.2d 1104 (Finding error in the district court's denial of defense counsel's motion for a mental exam of defendant, simply because defendant objected). As the Johnson court recognized, a defendant's opposition to a psychiatric examination "is just as consistent with incompetency as it is with competency." 527 F.2d at 1107. This statement regarding competency can also be applied to the question of sanity. Because of the importance of the questions of sanity and competency, the law vests with criminal defense attorneys the power to override the decision of their clients not to submit to psychiatric evaluations. In no other area does the law grant an attorney the power to request that the court, on behalf of his client, compel an action that his client in fact opposes. This power results from the presumption that, in a case such as the one here, defense counsel is the party best equipped to balance the wishes of the defendant against the potential legal consequences of abiding by those wishes. And as Johnson demonstrates, the trial courts are obligated to rely more heavily on the advice of defense counsel than the wishes of a mentally suspect defendant in deciding whether to order a psychiatric examination.
 
 
 47
 In view of these principles, it was incumbent upon Williams, who had ample reason to suspect that Shull suffered from mental problems, to thoroughly investigate the possibility of an insanity defense. This investigation should have included a court ordered psychiatric examination, if necessary.
 
 
 48
 In Proffit v. United States, 582 F.2d 854, (4th Cir.1978) this court found that a court appointed counsel's failure to move for the psychiatric examination of his client because of the cost of such an examination constituted a sixth amendment violation. The court noted:
 
 
 49
 Comparatively few defendants exhibit symptoms of mental illness, and there is no obligation on conscientious defense counsel to seek the services of a [psychiatric] expert in most cases. But when it appears to counsel that the accused is mentally ill and that he cannot afford to consult a psychiatrist, it is counsel's duty to inform the court of the situation and move for a psychiatric examination.
 
 
 50
 582 F.2d at 858-59. Surely the same duty to seek help from the court exists where any counsel, either privately retained or court appointed, who believes that a psychiatric exam could be crucial to his client's defense, encounters a defendant who refuses to submit to such an exam. As one court stated "[w]hile a client may prove obstinate, it is still the responsibility of defense counsel to pursue all avenues leading to that client's best interests." Brennan, supra, at 158.
 
 
 51
 Furthermore, the lack of an alternative defense heightens the attorney's investigative duties as to "any avenue which offers hope." Walker, supra, at 1440. See also Wood v. Zahradnick, 578 F.2d 980, 982 (4th Cir.1978); Brennan, supra, at 157. Like both Brennan and Walker, the instant case "is not the typical ineffective assistance case in which the decision to adopt one of several possible trial strategies can be seen in retrospect to have been ill-advised. ... there were absolutely no other viable defenses and few, if any, factors in mitigation." Brennan, supra, at 157. By Williams' own admission, given the overwhelming amount of evidence against his client, the insanity defense represented the only viable defense available to Ms. Shull. Yet because Ms. Shull, whose reasoning abilities Williams himself suspected, did not want to undergo a psychiatric evaluation, counsel chose not to present this defense. Under these circumstances, however, Shull's desire not to undergo a psychiatric exam "cannot justify leaving [her] totally defenseless." Walker, supra, at 1442. Because Williams unjustifiably left his client essentially defenseless, his representation was legally ineffective.
 
 II.
 Prejudice
 
 52
 Although the majority opinion declines to address specifically the effective assistance question, it holds that even if Ms. Shull received incompetent representation, she suffered no prejudice. The majority bases its conclusion on three findings, none of which, in my opinion, are supported by the record.
 
 
 53
 The court's opinion first asserts that the testimony of Dr. Follingstad, a clinical psychologist who evaluated Shull in 1984, would not support an insanity defense. For an insanity defense, South Carolina applies the M'Naughten standard. At the PCR hearing Dr. Follingstad stated that she was familiar with and understood the M'Naughten standard, and that in her opinion, Shull would have been considered insane under that standard. I fail to see how this direct testimony from a psychiatric expert that, under the applicable legal standard, the defendant was insane at the time of the crime, is insufficient to support an insanity defense.
 
 
 54
 I note that Dr. Follingstad was the only mental health expert to testify at the PCR hearing. The only expert evidence of record, therefore, demonstrates that the outcome of Ms. Shull's trial likely would have been different had her attorney fulfilled his obligation to investigate an insanity defense.[3]
 
 
 55
 The majority also holds that Ms. Shull did not establish her incompetence to stand trial. The court's logic seems to be that because she was competent, Ms. Shull is bound by her refusal to undergo a psychiatric examination. I cannot understand why this "finding" of competence, even if correct, should affect the outcome of this case. The pertinent question here is not whether Ms. Shull was competent; the issues are whether her attorney afforded her adequate representation and, if not, whether Ms. Shull suffered prejudice as a result. As explained throughout this dissent, I believe that Ms. Shull suffered substantial prejudice as a result of her attorney's egregious failure to investigate an insanity defense. The attorney's incompetence and the resulting prejudice to Ms. Shull occurred regardless of whether she was competent to stand trial.[4]
 
 
 56
 Finally, the court holds that Ms. Shull was not prejudiced by Williams' failure to present any evidence of mental illness at the sentencing phase of her trial. The court bases this conclusion on the shock expressed by the trial court at the nature of this crime. After Williams communicated to the trial court that his client desired "no mercy" the judge replied:
 
 
 57
 To be quite frank with you, it is just as well that you don't because I have no intention. I have none. I tried a great many cases. I tried six capital murder cases. I have had to sentence three people to death. I have had to make a lot of difficult sentences. Sentencing is always difficult. In this instance I have no difficulty. It is one of the most heinous, dastardly, corrupt, evil cases that I have ever seen. The conscience of this community is shocked by it, and I intend to voice that conscience in imposing sentence.
 
 
 58
 Given the degree of outrage expressed by the trial court, the majority theorizes that nothing Williams could have done would have resulted in a lighter sentence for Ms. Shull. This theory, however, runs counter to some of the most fundamental presumptions underlying our criminal justice system.
 
 
 59
 Society punishes criminals for their actions because they, like all adults, are presumed to know right from wrong. The more egregious the crime the greater the punishment, because the degree of culpability is presumed to be greater. Because Williams presented absolutely no mitigating factors at the sentencing stage, the trial court was obligated to view Ms. Shull's conduct as that of an average, rational adult. From that perspective Ms. Shull's acts were both without and beyond explanation. This lack of explanation, no doubt, contributed a great deal to the trial judge's assertion that this was one of the "most heinous" crimes he had ever seen. Any evidence, therefore, that Ms. Shull was either unable to distinguish right from wrong or was unable to comprehend the seriousness of her crimes would have most likely resulted in a lighter sentence than the one imposed.
 
 
 60
 For the reasons set forth herein I would affirm the district court's finding that Ms. Shull received ineffective assistance of counsel. I would, however, reverse the finding that this ineffective assistance resulted in no prejudice to Ms. Shull, and I would grant the writ of habeas. I, therefore, dissent from the court's decision.
 
 
 
 [1]
 When there are not serious doubts about the client's mental state, it is proper for a defense counsel to bow to a client's wish regarding a mental examination. Clanton v. Bair, 826 F.2d 1354, 1358 (4th Cir.1987), cert. denied, 56 U.S.L.W. 3483 (1988). In Clanton, the defendant "seemed lucid and rational. He gave no indication of any mental or emotional problems. There was no doubt of his competence to stand trial and nothing suggestive of a possible defense of insanity at the time of commission of the murder."
 
 
 [2]
 The inquiry, in all events, is the reasonableness of the attorney's actions: "... a court deciding on actual ineffectiveness claims must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690
 
 
 [1]
 Ethical Consideration 7-7 of the American Bar Association Code of Professional Responsibility provides, in pertinent part:
 In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client and, if made within the framework of the law, are binding on his lawyer.
 Ethical Consideration 7-8 provides, in pertinent part:
 In the final analysis, however, the lawyer should always remember that the decision to forego legally available objectives and methods because of non-legal factors is ultimately for the client and not for himself.
 
 
 [2]
 This belief was undoubtedly reinforced by theprosecutor's urging to Shull's attorney that she enter a guilty plea and spare the child the ordeal of testifying
 
 
 [1]
 At the PCR hearing Ms. Shull testified that she did not realize she had been on trial. Rather, she thought it was her son who was being tried. This does not indicate competency
 
 
 [2]
 The morning that trial began was the first, and only, time that Williams mentioned the possible need for a psychiatric exam to the court
 
 
 [3]
 I remind the court that Ms. Shull was not obligated to demonstrate that an insanity defense would have been successful. She needed only to demonstrate "a reasonable probability" that an insanity defense would have been successful, "in the sense that the possibility [of success] is sufficiently substantial that the failure to present the defense undermines confidence in the outcome. This is all that Strickland v. Washington requires." Walker, supra, at 1445. Dr. Follingstad's testimony, especially when viewed in light of Williams' testimony, Shull's testimony, and the circumstances surrounding this case, is sufficient to establish that "reasonable probability."
 
 
 [4]
 This court's decision in Hooper v. Garraghty, 845 F.2d 471 (4th Cir.1988), serves as proof that the question of Ms. Shull's competency is of little importance. In Hooper, the defendant himself, rather than his attorneys, requested a psychiatric evaluation. The psychiatrists at the state institution found him competent to stand trial, but refused to evaluate the defendant's sanity without a court order. Rather than filing for a court order, the defense attorneys talked with the legal counsel at the state psychiatric institution where their client had been evaluated. The institute's lawyer told defense counsel that it was unlikely that further examinations would help prove that the defendant was legally insane at the time of the crime. The attorneys then told their client that it was doubtful that he would receive a psychiatric evaluation that would help him in his insanity defense. They did not tell defendant that their assessment was based on the opinion of another attorney, rather than a psychiatrist. Given this information, the defendant entered into a plea agreement. The defendant later filed a habeas petition, and this court found that the attorneys' failure to pursue an insanity defense constituted ineffective assistance of counsel despite the defendant's competence at the time he entered the plea agreement
 The court's decision today, therefore, results in two standards for ineffective assistance of counsel claims in this circuit. Under Hooper, a defendant who has the ability to recognize that she might have mental problems, and suggests that fact to her attorney, receives ineffective assistance when the attorney fails to adequately investigate the possibility of an insanity defense. Under Shull, a defendant surrounded by people, including her own attorney, who believe her to be crazy, but who is in fact too psychologically unstable to recognize that possibility herself, receives effective assistance despite her attorney's failure to investigate an insanity defense. This distinction is, at best, arbitrary.