**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

MARSHALL EARL FITZGERALD, a/k/a
Marshall Fitzgerrel, a/k/a

No. 94-5716

Marshall E. Fleaming, a/k/a Charles
Fitzgerald, a/k/a Charles E.
Fleaming, a/k/a Allen Gibson, a/k/a
Brownie, a/k/a Mickey, a/k/a
Marshall E. Fleming,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CR-94-250)

Argued: September 29, 1995

Decided: January 8, 1996

Before HALL and NIEMEYER, Circuit Judges, and BEATY,
United States District Judge for the Middle District of
North Carolina, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Beaty wrote the opinion, in
which Judge Niemeyer joined. Judge Hall wrote a concurring opinion.

_____

**COUNSEL**

**ARGUED:** Joseph John McCarthy, DELANEY, MCCARTHY,
COLTON & BOTZIN, P.C., Alexandria, Virginia, for Appellant.

Gerald J. Smagala, Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

BEATY, District Judge:

Marshall Fitzgerald ("Fitzgerald") appeals his conviction of a four-count indictment which charged him with kidnapping in violation of 18 U.S.C. § 1201(a) and 2, use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1), possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2), and possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d) and § 5871. We find his assignments of error have no merit, therefore, we affirm his conviction.

I.

On November 30, 1991, in Prince William County, Virginia, Fitzgerald and three friends entered Michael Reed's ("Reed") taxicab and asked him to take them to Crystal City, Virginia. Just minutes prior to stepping into Reed's taxicab, Fitzgerald had robbed the convenience store very close to where Reed picked him up. While in the taxicab, Fitzgerald overheard the dispatcher talking to Reed, became very nervous, pointed a sawed-off shotgun at Reed, and ordered him to take them to Washington, D.C. When they reached Washington, D.C., Fitzgerald and his friends exited the car. On appeal, Fitzgerald asserts four assignments of error that he contends were committed at trial. Fitzgerald's assignments of error address the following issues: (1) inadequate jury voir dire; (2) improper admission of 404(b) evidence; (3) prosecutorial misconduct in the closing arguments; and (4) inadequate jury instructions. We will address each assignment of error in turn.

II.

Fitzgerald's first assignment of error relates to the limited jury voir dire conducted by the district court. It is well established that a trial court may exercise broad discretion in conducting the voir dire of the jury, and particularly in phrasing the questions to be asked. United States v. Jones, 608 F.2d 1004, 1007 (4th Cir. 1979), cert. denied, 444 U.S. 1086 (1980). See, e.g., Ristaino v. Ross , 424 U.S. 589, 594-95 (1976); United States v. Johnson, 527 F.2d 1104, 1107 (4th Cir. 1975). Fitzgerald contends he was denied the right to an impartial jury when the district court, in a pretrial hearing, prohibited him from mailing a questionnaire to the jurors prior to trial. He further argues that the error was compounded when the district court failed to ask four specific questions which concerned the jurors' ability to render a fair and impartial verdict. At trial, Fitzgerald declined to accept the district court's invitation to pare down the questionnaire to more germane issues.

One of the four questions Fitzgerald raises on appeal concerns whether the jury would give more weight to the testimony of a law enforcement officer than that given to any other witness. This question raises an appropriate subject for voir dire. The failure to ask this specific question, if error, would constitute a trial error that is subject to review under the harmless error standard of Chapman v. California, 386 U.S. 18, 24 (1967), reh'g denied, 386 U.S. 987 (1967). In Chapman, the Supreme Court held that before a federal constitutional trial error can be held harmless, the court must be able to declare that the error was harmless beyond a reasonable doubt. Fitzgerald relies on United States v. Evans, 917 F.2d 800 (4th Cir. 1990), which held that the district court erred when it did not ask the jurors what weight they would give to a police officer's testimony. However, Evans is distinguishable from the facts of this case. In Evans, the government's case relied solely on the testimony of one agent. Id. at 808. The evidence in the present case included more than the testimony of a single law enforcement agent. Not only did the government present testimony from two additional government employees, it also provided testimony from Reed, the taxicab driver, Paul Snider, who was Fitzgerald's confidant, and Elaine Owens ("Owens"), one of the passengers who accompanied Fitzgerald into Reed's taxicab. Although we find that additional questions could have

3

been asked of the jurors concerning what weight they would give to a police officer's testimony, we find that any error in failing to inquire further is harmless beyond a reasonable doubt. This is especially true since the district court did ask the jurors whether they had any immediate family members who were involved in law enforcement in any capacity. Based on the answers provided by the jurors to this question, Fitzgerald was provided an opportunity to effectively exercise his peremptory challenges during the voir dire.

The three other voir dire questions which Fitzgerald now highlights include whether the jury understood the presumption of innocence, whether they or their family members had any prior experience with the crime Fitzgerald was charged, and whether they understood the English language. We find no error with regard to these three questions. Specifically, as to the first question of whether the jury had any prior experience with the crime Fitzgerald was charged, we find that this subject was sufficiently covered when the district court inquired whether any of the jurors had ever been involved in a criminal case as a witness, victim, or defendant. In response to this specific question, none of the jurors gave an affirmative answer. Second, the question regarding whether the jury understood the presumption of innocence was adequately covered when the district court asked the jury if they could render a fair and impartial verdict. The court was not required to ask the question in any specific manner. Moreover, in the preliminary instructions to the jury, the district court fully addressed the law on presumption of innocence by stating, "The defendant has no burden to prove his innocence or to present any evidence or to testify." (J.A. at 54.) The district court further covered the subject of presumption of innocence in the final charge by indicating, "The law presumes a defendant to be innocent. Thus, the defendant, although accused, begins the trial with a clean slate, with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused." (J.A. at 249.)

Finally, as to the question of the jurors' ability to understand the English language, the record does not reflect that the jurors ever gave any reason for the district court to question any of the jurors' proficiency for the English language. In order for a jury verdict to be set aside on this issue, defendant must present "`clear evidence of a

4

juror's incompetence to understand the issues and to deliberate at the time of his service.'" United States v. Hall , 989 F.2d 711, 714 (4th Cir. 1974) (quoting United States v. Dioguardi , 492 F.2d 70, 78 (2d Cir. 1974), cert. denied, 419 U.S. 873 (1974)). After reviewing the record we find no evidence or objection by Fitzgerald which raises an issue of jury incompetence during the trial. We further find that the district court adequately questioned the jury so as to allow Fitzgerald to make an intelligent exercise of his peremptory challenges. See United States v. Brown, 799 F.2d 134, 135 (4th Cir. 1986). Therefore, the district court did not abuse his discretion in conducting voir dire, and we find no error.

III.

Fitzgerald also contends that the district court erred in allowing evidence of two robberies he was alleged to have committed within twenty-four hours of the kidnapping of Reed. The admission of evidence under Rule 404(b) of the Federal Rules of Evidence is within the discretion of the trial court, and its admission will not be overturned unless its decision is shown to be arbitrary or illogical. United States v. Bailey, 990 F.2d 119, 122 (4th Cir. 1993). We have established a four-prong test to be applied to 404(b) evidence: (1) the evidence must be relevant to an issue other than character, (2) the evidence must be necessary to prove an element of the crime on trial, (3) the evidence must be reliable, and (4) applying Rule 403, the evidence, although relevant, must not be substantially outweighed by the danger of unfair prejudice. Id. (citing United States v. Rawle, 845 F.2d 1244 (4th Cir. 1988)).

Here, the evidence regarding the robberies committed by Fitzgerald on November 29 and 30, 1991, was highly probative, since it illustrated a similar motive, plan, and scheme to the present offense charged against Fitzgerald. For example, on November 29, 1991, the day before kidnapping Reed, Fitzgerald committed an armed robbery with the same sawed-off shotgun he used on Reed. In addition, Fitzgerald used a taxicab after the prior robbery to travel to Washington, D.C., to purchase drugs with the stolen money. On November 30, 1991, during the present charged offense, Fitzgerald robbed a convenience store, fled the scene in Reed's taxicab, and again traveled to Washington, D.C., for the purpose of purchasing drugs with money

5

stolen from the robbery. His modus operandi after each robbery included fleeing the crime scene in a taxicab to Washington, D.C., to buy drugs with the stolen money. Owens' testimony that she was with him on the previous day when he robbed the Mexican store in conjunction with Fitzgerald's own admission of these prior incidents to three government witnesses, Reed, Lieutenant Boteler, and Snider, establishes the reliability of the evidence. There is no question that the substantial evidence of criminal activity describing Fitzgerald's motive, plan, and scheme to commit a similar offense is prejudicial to his case. However, we find that the evidence of a similar modus

operandi, motive, plan, and scheme as offered pursuant to 404(b) substantially outweighed any prejudicial effect to Fitzgerald. The district court, therefore, did not err by allowing the government to introduce evidence of the two robberies during Fitzgerald's trial. We further find that based upon the probative nature of the robbery incidents, the district court had good cause to excuse any pre-trial notice requirement for the use of 404(b) evidence.**1**

_____

**1** Fitzgerald claims that the government failed to give him five days notice of its intention to use the two robbery incidents at trial as required by the district court's order. On the other hand, the government contends that it gave Fitzgerald adequate notice. During the motion in limine before trial, the following discussion ensued regarding the 404(b) notice requirement:

> MR. HULKOWER (government): Judge, without addressing the 404(b) notice question, although I would point out that we have given adequate notice . . . .

> . . . .

> THE COURT: All right. I would find that the Government is entitled to use the evidence of the two prior offenses to the extent that it involves a cab to make the getaway scene.

Based on this colloquy, the district court found it unnecessary to address whether the government had actually failed to comply with the pre-trial notice requirement because it found that the evidence was admissible due to its high probative value.

6

IV.

Fitzgerald's third assignment of error asserts that the district court failed to grant a new trial based upon the prosecutor's closing arguments describing the evidence as being one-sided and overwhelming. Fitzgerald argues that these comments brought to the jury's attention his failure to testify. Fitzgerald also contends that the prosecutor injected his own personal beliefs into the closing arguments by stating the jury could sit on juries for years and would never see a stronger case. In United States v. Francisco, 35 F.3d 116, 120 (4th Cir. 1994), cert. denied, 115 S. Ct. 950 (1995), we held that in order to determine whether a prosecutor's comments were prejudicial we must decide whether the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." The two-prong test for reversible prosecutorial misconduct is: (1) whether the prosecutor's remarks or conduct was improper, and (2) whether such remarks or conduct prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial. Id.  In addition to this two-step inquiry, we have also acknowledged that closing arguments are not merely a time for a summation of undisputed facts, but also a time to draw reasonable inferences from the evidence. Id.; United States v. Brainard, 690 F.2d 1117, 1122 (4th Cir. 1982), cert. denied, 471 U.S. 1099 (1985).

In the instant action, the prosecutor's comment that the evidence was one-sided and overwhelming did not refer to Fitzgerald's failure to testify. It, instead, reflected exactly what the evidence revealed, that is, that the government established facts from which the jury could return a guilty verdict. Additionally, the comment that the jury could sit on juries for years and never see a stronger case referred to the strength of the government's case. Therefore, we find that all of the statements made by the prosecutor, in the context of the evidence presented, were reasonable inferences that could be drawn from the evidence, and therefore did not improperly interject impermissible bias into the minds of the jurors.

V.

Finally, Fitzgerald maintains that his conviction should be reversed based upon the district court's refusal to submit a special verdict

form. Fitzgerald argues that the jury should have been required to specify by unanimous verdict which of the five enumerated elements constitute the actus reus Fitzgerald employed to commit the kidnapping offense. In essence, Fitzgerald contends that the district court erroneously instructed the jury in the disjunctive on the kidnapping offense as cited in 18 U.S.C. § 1201(a)(1)**2** rather than in the conjunctive as he was charged in the indictment.

It is well settled that federal pleading requires that an indictment be stated in the conjunctive language in order to fully inform the accused of the charges. United States v. McGinnis, 783 F.2d 755, 757 (8th Cir. 1986). This means that "[p]roof of any one of the violations charged conjunctively in the indictment will sustain a conviction." Id.; see also United States v. Champion, 387 F.2d 561, 563 (4th Cir. 1967) (providing that an indictment worded conjunctively under a statute which uses disjunctive language may be disjunctively considered by the jury and proof on any one of the allegations is sufficient to sustain a conviction); see also Fed. R. Civ. P. 7(c)(1) (stating that "[i]t may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means."); see also Schad v. Arizona, 501 U.S. 624, 631-2 (1991), reh'g denied, 501 U.S. 1277 (1991) (providing that jurors are not required to agree on a single means of commission).

Even though the indictment charged the kidnapping offense in the conjunctive by stating Fitzgerald did "confine, kidnap, abduct, carry away and hold," the district court correctly used the disjunctive language of the statute to instruct the jury on the kidnapping offense. In any event, the evidence presented to the jury was sufficient for the jury to find the existence of one or more of the enumerated actus reuses of the kidnapping offense, even though they were not required to specify any one manner in which they found that Fitzgerald committed the kidnapping offense. Furthermore, since the disjunctive lan-

_____

**2** "Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, <u>or</u> carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof . . . shall be punished by imprisonment for any term of years or for life." Id. (emphasis added).

8

guage of the statute obviates the need for jurors to unanimously agree on any one of the enumerated methods of the actus reus of the kidnapping offense, we find that the district court properly instructed the jury on the kidnapping offense, and did not err by refusing to submit a special verdict form to the jury.

Accordingly, for the foregoing reasons, we affirm Fitzgerald's conviction.

AFFIRMED

HALL, Circuit Judge, concurring:

I agree with the majority's disposition of this case, as well as almost every statement contained in its opinion. I take issue only with Part IV, and then only insofar as it concludes that the prosecutor did nothing wrong by telling the jurors that they "could sit on juries for years and . . . never see stronger evidence." This remark invited the jury, in light of the prosecutor's superior experience, to refrain from exercising its independent judgment as to whether the government's case against Fitzgerald had been proved beyond a reasonable doubt. In essence, the jurors were asked to substitute the prosecutor's subjective viewpoint for their own common experience.

Although I believe that the remark was clearly inappropriate, I have no hesitation in concluding that the prosecutor's misstep, alone or in conjunction with the court's error during voir dire, ante at 3-4, did not affect the outcome of the trial. Indeed, the evidence against Fitzgerald was so strong that I cannot help but wonder why the government believed it necessary to stray beyond the bounds of propriety during its closing argument. I can only surmise that the prosecutor did not carefully consider his remark, and trust that he will not make this particular mistake again.

9